UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

COLLEEN ANN VANHORN,

                Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

─────────────────────────────────────

**REPORT AND
RECOMMENDATION**

10-CV-1023
(GLS/VEB)

## I. INTRODUCTION

In March of 2007, Plaintiff Colleen Ann VanHorn filed an application for disability and disability insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since March of 2007 due to physical impairments. The Commissioner of Social Security denied Plaintiff's claim.

Plaintiff, by and through her attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on March 29, 2007, alleging disability beginning on March 5, 2007. (T at 42, 85).[1]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Canton, New York, before ALJ Elizabeth W. Koennecke on May 27, 2009.[2] (T at 19).  Plaintiff appeared with an attorney and testified. (T at 22-38).

On July 23, 2009, ALJ Koennecke issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 9-18).  The ALJ's decision became the Commissioner's final decision on August 7, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

Plaintiff, through counsel, timely commenced this action on August 24, 2010.(Docket No. 1).  The Commissioner interposed an Answer on December 13, 2010. (Docket No. 9).  Plaintiff filed a supporting Brief on January 19, 2011. (Docket No. 12).  The Commissioner filed a Brief in opposition on March 7, 2011. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that the Commissioner's motion be

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 10).

[2] The ALJ was located in Syracuse, New York.  Plaintiff and her attorney appeared via videoconference from Canton. (T at 9).

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

denied, Plaintiff's motion be granted, and this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

  **1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 5, 2007, the alleged onset date.  (T at 11).  The ALJ concluded that Plaintiff had the following "severe" impairments: fibromyalgia, lumbar degenerative disc disease with radiculopathy, bilateral carpal tunnel syndrome, and obesity. (T at 12).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 13).  The ALJ concluded that Plaintiff retained the residual functional capacity to perform the full range of sedentary work, as

defined in 20 CFR § 404.1567 (a). (T at 13-17).

The ALJ found that Plaintiff was unable to perform her past relevant work as a cashier or nurse's aide. (T at 17).  However, considering Plaintiff's age (40 years old as of the alleged onset of disability), education (high school), and residual functional capacity, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 17).  Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act and was therefore not entitled to benefits. (T at 18).  As noted above, the ALJ's decision became the Commissioner's final decision on August 7, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers five (5) principal arguments in support of this position.  First, Plaintiff contends that the ALJ should have concluded that her impairment met or medically equaled an impairment set forth in the Listings.  Second, Plaintiff argues that the ALJ did not properly assess the medical evidence of record.  Third, Plaintiff asserts that the ALJ did not properly evaluate her credibility.   Fourth, Plaintiff contends that the ALJ's residual functional capacity assessment was flawed.  Fifth, Plaintiff argues that the ALJ's conclusion regarding the existence of jobs in the national economy that Plaintiff can perform is not supported by substantial evidence.  This Court will address each argument in turn.

### a.    Listing-Level Impairment

If a claimant suffers from an impairment or combination of impairments that meets

or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

Specifically, the impairments listed in Appendix 1 of the Social Security Regulations (the "Listings") are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing impairment is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530.

To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt.

7

P, App. 1 § 1.00(B).  Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints.  Id.

Plaintiff contends that her impairment meets or medically equals the impairment set forth in § 1.04 (A) of the Listings (Disorders of the Spine).  To satisfy that Listing, a claimant must have a spine disorder "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," along with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.

There is no question that Plaintiff suffers from a spinal disorder that causes nerve root compromise.  A September 2008 MRI of the lumbar spine indicated a "moderate to large central to right disc herniation with a fragment," which extends with "slightly" inferior indentation of the descending S1 nerve root within its lateral recess. (T at 376).  The Commissioner concedes that this aspect of Listing § 1.04 has been satisfied. (Docket No. 14, at p. 7).

Plaintiff argues that she suffers from neuro-anatomic distribution of pain (i.e. pain attributable to the nerve root compromise).  The Commissioner does not appear to contest this point. (Docket No. 14, at p. 6-8). The medical record documents complaints of pain radiating down Plaintiff's right leg. (T at 218, 308, 311, 314).  Dr. Juan Diego Harris, a pain management specialist, described Plaintiff's low back pain as "significant, . . . axial and

radicular in nature . . . ." (T at 407).   He attributed "some" of Plaintiff's "radicular symptomology" to her disc herniation. (T at 407).

Plaintiff contends that she also has a medically documented limitation in the motion of her spine.  In support of this argument, Plaintiff cites the report of Dr. James Naughten, a consultative examiner.  Dr. Naughten found diminished motion in Plaintiff's cervical, thoracic, and lumbar spine. (T at 244-45).  The Commissioner points to treatment notes describing Plaintiff's spinal range of motion as normal (T at 220, 312) or, alternatively, characterizing her spinal motor limitation as mild. (T at 293, 406).

Plaintiff also argues that she suffers from motor loss with muscle weakness accompanied by sensory or reflex loss.  Dr. Naughten observed that Plaintiff walked with a wadding and stiff gait. (T at 244).  He noted that she appeared imbalanced when walking on heels and toes. (T at 244).  Dr. Naughten also assessed limitations with regard to Plaintiff's fine motor skills, with a loss of grip strength (greater on the left) and "bilateral thenar wasting of both hands."[5] (T at 244).  Dr. Harris, the pain specialist, noted limited reflexes. (T at 407).  The Commissioner points to numerous records documenting normal motor and sensory exams. (T at 196, 290, 291, 293, 297, 326, 329, 332, 384, 407, 414, 416).

Plaintiff contends that the positive straight-leg ("SLR") test requirement was satisfied, pointing to two records documenting positive SLR tests. (T at 245, 309). The SLR test "is used to detect nerve root pressure, tension or irritation." Mattison v. Astrue, No.

---

[5]Bilateral thenar wasting refers to an atrophy of the muscles of both thumbs.  See http://images.rheumatology.org/viewphoto.php?albumId=77030&imageId=2897720 (last accessed March 28, 2012).

07–CV1042, 2009 WL 3839398, at *4 n. 10 (N.D.N.Y. Nov. 16, 2009). "A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure." Id. (citing Andersson & McNeill, Lumbar Spine Syndromes 78–79 (Springer–Verlag Wein 1989)).  In the present case, Dr. Naughten noted a supine SLR test of 20 degrees, but indicated that the "seated SLR bilaterally [was] negative." (T at 245). The other record noting a positive SLR test is non-specific as to the elevation and whether the test was supine, sitting, or both. (T at 309).

      As noted above, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (T at 13).  However, the ALJ supported her decision by simply reciting the requirements of Listing § 1.04 and referring generically to the "evidence."  (T at 13).

      This lack of specificity frustrates meaningful judicial review.  The findings of Dr. Naughten provide some support for Plaintiff's claim that her impairment meets Listing § 1.04 (A).  For example, Dr. Naughten found limitation of motion of the spine and motor loss (associated with muscle atrophy in Plaintiff's hands). (T at 244-45).  The ALJ afforded "significant weight" to Dr. Naughten's assessment (T at 16), but did not reconcile that finding with her conclusion that Listing § 1.04 (A) had not been satisfied.  It also appears Plaintiff made at least a prima facie showing that the other elements of Listing § 1.04 (A) were present by, for example, pointing to positive SLR tests (T at 245, 309) and neuro-anatomic distribution of pain. (T at 218, 308, 311, 314, 407).

      This Court is mindful that "[c]onflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)).

However, the ALJ's failure to cite specific evidence in support of her Listing determination makes it difficult to discern whether or how the ALJ resolved those conflicts.  Where, as here, there is a question as to how the ALJ weighed the evidence and whether the ALJ applied the appropriate legal standard, remand is the remedy.   This is particularly appropriate where, as here, there is evidence in the record that supports the claimant's argument and it is not clear whether or how the ALJ reconciled that evidence with her findings. See  Conway v. Barnhart, No. 00 Civ. 8148, 2002 WL 31478192, at *4 (S.D.N.Y. Nov.6, 2002) (holding that remand was proper "when there is a question as to how the ALJ applied legal standards, such as determining what controlling weight was given to a treating physician's conclusions and diagnosis" (citing Rosa v. Callahan, 168 F.3d 72, 79-81 (2d Cir.1999)).

### b.    Assessment of Medical Evidence

Plaintiff challenges the ALJ's assessment of certain medical evidence.   For example, the ALJ afforded "significant weight" to Dr. Naughten's findings, but then failed to assess conflicts between those findings and the ALJ's residual functional capacity ("RFC") determination.   This Court finds this argument persuasive.   In particular, Dr. Naughten opined that Plaintiff "may need to be restricted from activities requiring mild to greater exertion in terms of pushing, pulling, reaching, lifting, carrying, or handling objects." (T at 245).   This finding was consistent with the assessment of Steven Nevorski, a physician's assistant, who treated Plaintiff and opined that she could not lift or carry any weight and was limited with regard to her ability to push/pull. (T at 378-39).

The ALJ concluded that Plaintiff could lift/carry ten pounds frequently and push/pull using all of her extremities consistent with sedentary exertion (T at 13), but did not

11

expressly reconcile these findings with Dr. Naughten's assessment.   Moreover, Dr. Naughten found limitations with regard to Plaintiff's fine motor skills, with a loss of grip strength (greater on the left). (T at 244).  This finding was at odds with the ALJ's conclusion that Plaintiff had no manipulative limitations.[6] (T at 13).   Because the ALJ afforded "significant" weight to Dr. Naughten's opinion, her failure to reconcile these material aspects of his assessment with her RFC determination undermines confidence in that determination.

This Court is also persuaded that the ALJ did not properly assess the opinion of physician's assistant (PA) Neveroski.  As referenced above, PA Neveroski opined that Plaintiff could not lift or carry any weight. (T at 378).  He also found that Plaintiff was limited to standing and/or walking less than 2 hours in an 8-hour workday and could not sit for more than 6 hours in an 8-hour workday. (T at 377-78).  PA Neveroski also opined that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work and that the physical activity increased the pain and caused abandonment of tasks related to daily activity or work. (T at 382).

The ALJ concluded that PA Neveroski's opinion was not well-supported by objective medical findings and appeared to be based "merely" on Plaintiff's subjective complaints. (T at 16).  The ALJ did correctly note that a physician's assistant is not an "acceptable source" under the Social Security Regulations. (T at 16).  However, the ALJ's analysis is problematic in at least three respects.

---

[6]The ALJ might have found that Dr. Naughten's findings with respect to Plaintiff's left-side grip strength could be discounted because Plaintiff subsequently had carpal tunnel release surgery on her left hand. (T at 276).  However, that would still not address the issue of loss of right-sided grip strength/numbness (T at 30, 442) the fact that Plaintiff continued to experience some numbness and tingling in both hands in spite of the surgery. (T at 276, 442).

First, PA Neveroski's opinion was supported by several pieces of important evidence, including Dr. Naughten's opinion, Dr. Harris's finding that Plaintiff suffered from "significant low back pain" (T at 407), and an MRI documenting a nerve-impinging disc herniation. (T at 376).

Second, the Second Circuit has held that a patient's complaints or reports of his history are "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool.").  As such, it was not improper for the physician's assistant to use Plaintiff's complaints of pain as a diagnostic tool.

Third, while the ALJ was correct that PA Neveroski was not an "acceptable medical source,"[7] the ALJ should nevertheless have afforded careful consideration to his opinion, particularly given the duration and frequency of the treating relationship.[8]  See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009)(finding that "[b]ased on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician").

In addition, this Court finds that the ALJ did not properly assess the evidence

---

[7]There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Chiropractors and physician's assistants are not included among the "acceptable medical sources" and their opinions are not entitled to any special weight.  Rather, chiropractors and physician's assistants are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).

[8]The treatment records constitute a major portion of the medical record. (T at 204-42, 260-75, 307-75).

concerning Plaintiff's carpal tunnel syndrome.  The ALJ noted Plaintiff's carpal tunnel diagnosis, but discounted the limiting effect of her symptoms because carpal tunnel release surgery had been "generally successful in relieving the symptoms." (T at 15). However, the record contained evidence that Plaintiff continued to experience numbness and tingling in both hands in spite of the surgery. (T at 276, 442). Indeed, the ALJ concluded that Plaintiff's bilateral carpal tunnel syndrome remained a "severe impairment" even after surgery. (T at 12). The ALJ found that Plaintiff had no manipulative limitations (T at 13), but failed to reconcile this finding with the evidence of ongoing carpal tunnel symptoms.

Remand for reconsideration and possible further development of the record concerning the nature and extent of Plaintiff's possible manipulative limitations should therefore be directed.

### c.    Credibility

Courts in the Second Circuit have determined pain is an important element in disability benefit claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

14

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional

limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the instant case, Plaintiff testified that she experiences pain in her shoulders, arms, back, knees, and hips, along with occasional spasms, radiating pain down her right leg, and difficulties with balance. (T at 28-29). While she experiences some relief from steroid injections and carpal tunnel release surgery, Plaintiff continues to suffer from significant pain, sleep difficulties, and numbness in her hands. (T at 30, 36). Plaintiff believes she could sit for 1 to 2 hours if permitted to change positions every fifteen minutes. (T at 34). Plaintiff testified that she could not lift more than 10 pounds and could perform limited household chores. (T at 35).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were only partially credible. (T at 14). The ALJ properly noted Plaintiff's consistent work history (T at 91), which entitled her testimony to enhanced credibility. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

However, the ALJ's overall credibility analysis was inadequate. Specifically, the ALJ

16

did not adequately consider the extensive evidentiary record supporting Plaintiff's claims of disabling pain, including the assessment of her treating physician's assistant (T at 382), her pain management specialist (T at 407), the consultative examiner's assessment (T at 245), as well as an MRI and clinical findings. (T at 376, 244-45, 309, 407).

In addition, Plaintiff has an extensive history of seeking relief for her conditions, which further bolsters the credibility of her claims.  The treatment has included surgery (T at 259); a broad array of medications (T at 198-99, 211, 243, 265, 289-91, 311, 314, 383, 405, 414, 416, 442); physical therapy (T at 33, 289, 294); trigger point injections and nerve blocks (T at 28-29, 196, 205, 243, 295-96, 407-11, 442); use of a cane (T at 405), and use of a heating pad, ice, and a splint/brace. (T at 33, 205, 212).

The ALJ also noted that Plaintiff continued working after the alleged onset date and found that this work activity "demonstrates that [Plaintiff] has maintained and is able to maintain a reasonable functional level." (T at 14).  However, the ALJ concluded that this work did not rise to the level of substantial gainful activity (T at 11-12) and the record contains no evidence concerning the exertional or non-exertional demands of this work. During the hearing, the IHO questioned Plaintiff about her past employment (T at 38), but asked no questions concerning the demands of the job she maintained after the alleged onset date.  Before concluding that this employment indicated an ability to "maintain a reasonable functional level," the ALJ was obliged to develop the record in this regard.

The ALJ also speculated that, given Plaintiff's complaints, "one might expect to see some indication in the treatment records of restrictions placed on [Plaintiff] by her treating physican's [sic]." (T at 15).  However, the ALJ does not appear to have accounted for the fact that the treating providers could have considered the articulation of such restrictions

17

unnecessary because Plaintiff was not working during much of the period covered by the medical record.

This matter should be remanded with instructions to the ALJ to reconsider Plaintiff's credibility in light of the concerns expressed above.

### d.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

The ALJ found that Plaintiff retained the RFC to lift/carry 10 pounds occasionally, 10 pounds frequently, stand/walk for about two hours and sit at least six hours in an 8-hour work day, push/pull consistent with sedentary exertion, and work without postural, manipulative, visual, communicative, or environmental limitations. (T at 13).  For the reasons outlined above, the RFC determination should also be revisited on remand. Specifically, the ALJ did not adequately reconcile his RFC determination with Dr.

18

Naughten's findings (T at 244-45), PA Neveroski's opinion (T at 378-82), or Plaintiff's testimony (T at 22-38).  A remand is therefore recommended.

### e.    Use of the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and

very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. (T at 15). As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).

When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

The ALJ concluded that a finding of "not disabled" would be directed by Medical-Vocational Rule 201.27 based upon Plaintiff's age, education, work experience, and RFC. (T at 18). However, as outlined above, the record indicates that Plaintiff suffers from non-

20

exertional impairments, such as pain and numbness, limited range of motion, and difficulty gripping and fingering objects.  The ALJ recognized these non-exertional impairments, but found that they had "little to no effect on the occupational base of unskilled sedentary work," and concluded that a finding of not disabled was warranted under the framework of Rule 201.27. (T at 18).  This finding was not supported by substantial evidence.  As outlined above, the record documented serious, sustained pain and fine motor limitations, which could reasonably be expected to have more than a *de minimus* impact on the occupational base of unskilled sedentary work.  A remand for reconsideration of this issue is recommended as well.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion

for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

                                        Respectfully submitted,

                                        Victor E. Bianchini
                                        United States Magistrate Judge

Dated:   March 31, 2012

          Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

22

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 31, 2012

Victor E. Bianchini
United States Magistrate Judge